By the Court. Bosworth J.
There is direct conflict between the testimony of Kelly, for the plaintiffs, and of J. S. Otis, for the defendant, in relation to the representations made by the defendant as to the solvency of Tripp. The same remark is equally applicable to the testimony of those two witnesses, as to what the defendant said, in the interviews between him and Kelly, after the failure of Tripp.
*424 If the representations testified to by Kelly were made, and, if the defendant, after Tripp’s failure, made the statements to which Kelly testifies, there can be no doubt of the plaintiffs’ right to recover. The jury had the witnesses before them, and would, naturally, in deciding upon evidence so conflicting, be influenced to some extent, by the manner of each witness.
The questions of fact to be decided, and those of credibility to be determined, are questions for the jury.
There were some circumstances to aid them in forming a conclusion, which are not present to the Court on an appeal.
We do not feel at liberty to say that the verdict of the jury is so clearly against evidence, as to justify us in setting it aside, on that ground.
But when the testimony on the part of the plaintiff is in such direct conflict with that on the part of the defendant, it is obvious that, very slight considerations may influence a jury to accept the testimony of one witness in preference to that of the other. Justice, to each party, requires that he should not be subjected to any possible prejudice by the admission of incompetent, or the exclusion of competent and pertinent testimony.
That the defendant’s firm, on receiving goods in payment of what Tripp owed them, received some which he had bought of the plaintiffs, was a fact which should not have been treated as strengthening the plaintiffs’ case, or weakening the defendant’s, unless the defendant had knowledge or reason to suspect, at the time he took them, that Tripp had so purchased them.
There was no attempt to prove such knowledge. Yet the admission of that evidence was pressed by the plaintiffs, and though its reception was objected and excepted to, by the defendant, was received by the Judge. Kelly, as well as Tripp, was closely examined with a view to establish that fact. It was, therefore, treated as a material fact, and which, if proved, was entitled to consideration.
The Court, in admitting the evidence against the objection of the defendant, treated it as material.
There is not the slightest proof, nor was there any attempt to prove, that the defendant or his firm knew that Tripp had purchased any of these goods of the plaintiffs. They were not-received until after the four months credit given by the defend *425 ant’s firm, on the sale made to Tripp, in October, 1854, had expired. That sale amounted to $240. The other notes held by defendant’s firm matured, one in Hovember, and two in December, 1854. Hence, there was no haste on the part of the defendant’s firm, in seeking payment from Tripp.
It was not-sought until some two months after one bill sold by the plaintiffs to him had become due.
We do not think this testimony was relevant for any purpose. It was calculated to prejudice the defendant with the jury. The admission of the evidence being urged and admitted as material, we cannot see that the jury were not influenced by it. The Judge erred in admitting it, and a new trial should, be granted.
We think the Judge also erred in excluding the 6th cross-interrogatory to Tripp, and his answer thereto. They were of the same nature as the 23d and 24th cross-interrogatories, and the answers to the latter.
The 6th cross-interrogatory, and the answer to it, were legitimate and proper, on a cross-examination. The evidence was pertinent and material, with respect to the credibility of Tripp, and of all such evidence given by him, as it might have been urged to the jury, tended to show that Otis had knowledge from Tripp, before making the representations complained of, that, although Tripp might possibly be solvent, the prospects were, that he could not long continue his business.
We think the Judge erred in allowing Kelly to testify what he heard at Syracuse, in respect to one of defendant’s firm having been there. Such evidence was incompetent. It was not merely irrelevant, but it was illegal. Hearsay evidence as to any matters in issue in the action was totally inadmissible.
If this were the only exception, we might refuse a new trial, if we could justly take the ground that the answer to the question could not have prejudiced the defendant. It is undeniable that one of defendant’s firm was at Syracuse in February, 1855.
But in one aspect, this evidence might have prejudiced the defendant.
Kelly testified that when the bill sold by plaintiffs to Tripp, at 60 days from October 5th, 1854, fell due, he called on the defendant ; that the defendant then said he thought Tripp’s affairs were in a bad state, and that the defendant thought it would not pay *426 to go to Syracuse, and that Kelly went to Syracuse in a few days after this interview. This testimony, if credited, would locate this conversation, and Kelly’s journey to Syracuse, early in December, 1854.
What Kelly heard while at Syracuse, he was allowed to testify, and to such testimony the defendant excepted. There is no testimony, besides this, which tends to show that either member of defendant’s firm had been to Syracuse between the sale in October, and February, 1855.
Even Kelly, on his cross-examination, locates this interview in March, 1855. But he does not choose to say that he had not been to Syracuse in the previous December. He does state, however, that, although the defendant said at that second interview, that “ It would not pay very largely to go to Syracuse: I did, however, go.”
There is no evidence, besides Kelly’s, that either of defendants’ firm went to Syracuse before February, 1855. Tripp did not stop business until October, 1855.
The jury may have concluded, if they placed more reliance on the testimony of Kelly, than on that of J. S. Otis, that Kelly called on the defendant early in December, when Tripp failed to pay the sixty day bill, and then had such an interview with the defendant, and immediately after that went to Syracuse; and there heard that one of the defendant’s firm had been there pre‘ viously to secure their claims. The jury, if they believed this, might justly regard the defendant’s conduct with more suspicion, than they would if it was clear that the defendant had manifested no concern about his own claims until after all of them had matured, and Tripp had wholly failed to pay.
In the one aspect of the case, the defendant when the new credit had not more than half expired, had become alarmed, and had been to Syracuse and taken payment of the debts due and not due, by receiving goods at less than their value, thus showing a great anxiety to get something, and a consciousness that he could not expect to do better by delay.
■ In the other, he manifested no premature anxiety, nor made any efforts to secure his debts, until after all had become due, and Tripp had failed to pay any part of either.
If we did not feel obliged to grant a new trial on other *427 grounds, we should have forborne to examine this exception, not only because it was not made a point on the argument, but because the defendant’s counsel, on his attention being called to it by the Court, disclaimed relying upon it, as sufficient to entitle him to a new trial. We have deemed it proper to advert to it, lest by possibility the case should again come before the Court, containing the same exception, when it might not be waived.
A new trial must be granted, with costs to abide the event.